```
 1

 2

 3

 4                 UNITED STATES DISTRICT COURT

 5                CENTRAL DISTRICT OF CALIFORNIA

 6                       SOUTHERN DIVISION

 7                           - - -

 8       THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

 9
         HAYDEE OUANO RASTEGAR,          )
10       et al.,                         )
                           Plaintiffs, )
11            vs.                        )
                                         )   SACR-16-78-JVS
12       WELLS FARGO BANK; et al.,       )
                                         )
13                         Defendants. )
         ----------------------------)
14

15

16            REPORTER'S TRANSCRIPT OF PROCEEDINGS

17                  Santa Ana, California

18                    March 14, 2016

19

20                    SHARON A. SEFFENS, RPR
                      United States Courthouse
21                    411 West 4th Street, Suite 1-1053
                      Santa Ana, CA  92701
22                    (714) 543-0870

23

24

25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
1   APPEARANCES OF COUNSEL:

2   For the Plaintiffs:

3   MARYANN CAZZELL
    CAZZELL & ASSOCIATES
4   406 West Fourth Street
    Santa Ana, CA  92701
5   (714) 558-1772

6

    For Defendant WELLS FARGO BANK, N.A.:
7
    D. DENNIS LA
8   ANGLIN, FLEWELLING, RASMUSSEN, CAMPBELL & TRYTTEN, LLP
    199 South Los Robles Avenue, Suite 600
9   Pasadena, CA  91101-2459
    (626) 535-1900
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | SANTA ANA, CALIFORNIA; MONDAY, MARCH 14, 2016; 2:04 P.M.     |
| 02:04 | 2  | THE CLERK:  Item No. 1, SACV-16-78-JVS, Haydee               |
| 02:04 | 3  | Ouano Rastegar versus Wells Fargo Bank, N.A.                 |
| 02:04 | 4  | MS. CAZZELL:  Good afternoon, Your Honor.  Maryann           |
| 02:04 | 5  | Cazzell on behalf of plaintiffs Rastegar.                    |
| 02:04 | 6  | THE COURT:  Good afternoon.                                  |
| 02:04 | 7  | MR. LA:  Good afternoon, Your Honor.  Dennis La on           |
| 02:04 | 8  | behalf of the defendant Wells Fargo Bank.                    |
| 02:04 | 9  | THE COURT:  Good afternoon.                                  |
| 02:04 | 10 | I trust you have both seen the tentative.                    |
| 02:04 | 11 | MS. CAZZELL:  Yes, Your Honor.                               |
| 02:04 | 12 | MR. LA:  Yes, Your Honor.                                    |
| 02:04 | 13 | THE COURT:  Let's take up the bank's motion first.          |
| 02:04 | 14 | Do you want to address that?                                 |
| 02:05 | 15 | MS. CAZZELL:  Yes, Your Honor.  Thank you.                  |
| 02:05 | 16 | I appreciate the Court's tentative, and there is a          |
| 02:05 | 17 | lot to cover, so I will try to address the most important   |
| 02:05 | 18 | things first.                                                |
| 02:05 | 19 | First, the breach of contract cause of action and          |
| 02:05 | 20 | the breach for implied covenant of good faith and fair      |
| 02:05 | 21 | dealing.  Breach of contract is alleged in the Complaint on |
| 02:05 | 22 | pages 16 through 22, and it's a pretty long cause of action.|
| 02:05 | 23 | The Court correctly found that there was no HOLA preemption  |
| 02:05 | 24 | as to this but said ultimately in the tentative that the    |
| 02:05 | 25 | plaintiffs could not allege performance because they had     |

02:05    1    defaulted on the loan.

02:05    2         The subject allegations here are at paragraphs 40

02:05    3    through 42 of the Complaint.  Most of these allegations,

02:05    4    Your Honor, if you are not letting the tail wag the dog,

02:05    5    which is what is happening with the breach of contract claim

02:05    6    for failure to allow a loan mod, is that Wells Fargo Bank

02:06    7    breached the terms of the trust deed and the promissory note

02:06    8    by, number one, claiming a default amount in excess of that

02:06    9    allowed under those loan instruments; and then, number two,

02:06    10   charging an excessive interest rate over those allowed by

02:06    11   the very terms of those.

02:06    12        The Court relied on the case Reyes Aguilar versus

02:06    13   Bank of America, which I'm going to get to below, to say

02:06    14   that you can't allege breach of contract if you haven't

02:06    15   shown performance, i.e., on the grounds that the plaintiffs

02:06    16   were in default at the time.

02:06    17        Okay, the majority of the allegations here are

02:06    18   based on illegality and fraudulent acts and acts that were

02:06    19   contra public policy in exceeding the money allowed and the

02:06    20   interest rate, the 2.8 percent interest rate that we allege

02:06    21   plausibly was fixed at the time World Savings went out of

02:06    22   business.

02:06    23        So before I even address those, I want to talk

02:07    24   about voidness.  Our allegation here is that really the

02:07    25   bank's acts were void, not just voidable.  The difference is

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

02:07   1   that void is that they are just void no matter what, and

02:07   2   they can be cut off at any point.  There is case law,

02:07   3   Seyfarth (1972) 22 Cal.App.3d 841.  At 854, that opinion

02:07   4   talks about how the Court can set aside a void action, a

02:07   5   void order, at any time, and it likens it to lopping off

02:07   6   what has been termed a dead limb on the judicial tree, a

02:07   7   void order, citing to the McMillan Petroleum Corp. versus

02:07   8   Griffin case.

02:07   9        The thing here is that Wells Fargo's action in

02:07   10   recording a Notice of Sale and in filing a proof of claim in

02:07   11   the Bankruptcy Court that were in excess of the total amount

02:07   12   allowed under those instruments is void, period.

02:07   13        Under this analysis, the void question, we don't

02:08   14   even get to the question of whether or not, you know, the

02:08   15   plaintiffs were in default or whether they performed.  It's

02:08   16   just void.

02:08   17        So assuming that the Court wants to get to these

02:08   18   other issues, I want to address then the Reyes case.  First

02:08   19   of all, Reyes is very distinguishable.  It was the

02:08   20   plaintiffs' third bite at the apple in trying to allege a

02:08   21   Complaint in federal court.  In that case, the Court had not

02:08   22   found HOLA preemption, and they were allowed state court

02:08   23   claims there as opposed to the kind of breach of contract

02:08   24   claims and such that we have here.

02:08   25        In fact, in Reyes, the plaintiffs were in default.

| 02:08 | 1 | What happened is the bank had given them a loan |
| 02:08 | 2 | modification.  They had made payments for over a year under |
| 02:08 | 3 | this and then got into a default and did not file a |
| 02:08 | 4 | bankruptcy.  That case is very different.  They didn't have |
| 02:08 | 5 | a situation with a cure and three years' worth of plan |
| 02:08 | 6 | payments under the bankruptcy. |
| 02:09 | 7 | Because this is so important, I really need to |
| 02:09 | 8 | address the Court's tentative finding that the plaintiffs |
| 02:09 | 9 | were in default.  The timing of when the plaintiffs were |
| 02:09 | 10 | allegedly in default is really crucial here.  First of all, |
| 02:09 | 11 | the tentative opinion -- it's at the bottom of page eight |
| 02:09 | 12 | where there is the allegation -- or the statement finding |
| 02:09 | 13 | that the plaintiffs were in default so they couldn't |
| 02:09 | 14 | maintain a breach of contract claim. |
| 02:09 | 15 | Okay, it's clear to me the Court does not mean |
| 02:09 | 16 | that if a party defaults at any time on a loan they are out |
| 02:09 | 17 | to lunch, and they can never bring a cause of action ever |
| 02:09 | 18 | against the bank.  I'm sure the Court didn't mean that.  I'm |
| 02:09 | 19 | sure the Court didn't mean that the bank could then do |
| 02:09 | 20 | whatever it wanted on the loan, charging excessive interest |
| 02:09 | 21 | rates, upping the amount and trying to foreclose for an |
| 02:09 | 22 | amount not permitted under the loan instruments themselves. |
| 02:09 | 23 | I'm sure the Court didn't mean that. |
| 02:09 | 24 | Parties cure defaults.  They do it every day. |
| 02:10 | 25 | Every day -- well, every weekday of the week parties cure |

| | | |
|---|---|---|
| 02:10 | 1 | defaults and mortgage instruments, Your Honor.  There are |
| 02:10 | 2 | special allegations, special ways, to do it, to reinstate or |
| 02:10 | 3 | cure a loan.  So to hold otherwise on that would mean Wells |
| 02:10 | 4 | Fargo Bank could just tack on another million dollars and |
| 02:10 | 5 | then say, oh, well, you defaulted before.  Sorry, you can't |
| 02:10 | 6 | have a claim.  I know the Court never intended that. |
| 02:10 | 7 | It's important to determine when the Court felt |
| 02:10 | 8 | that there was a default.  I'm assuming that the Court meant |
| 02:10 | 9 | there was a default when the plaintiffs didn't make payments |
| 02:10 | 10 | for three months as they were directed to do by World |
| 02:10 | 11 | Savings. |
| 02:10 | 12 | Okay.  Does that mean that they were in default |
| 02:10 | 13 | again when they did what was directed by World Savings to |
| 02:10 | 14 | wait another six months and then as directed by Wachovia to |
| 02:10 | 15 | wait another six months?  I don't know at what point it cuts |
| 02:10 | 16 | out.  But assuming that all that is accurate and that I am |
| 02:11 | 17 | correctly interpolating the Court's rationale, I can |
| 02:11 | 18 | understand that.  I mean, I don't agree obviously.  I |
| 02:11 | 19 | believe that there is promissory estoppel and stuff at work |
| 02:11 | 20 | here, but I understand it. |
| 02:11 | 21 | The problem here is that no matter what, no matter |
| 02:11 | 22 | how you look at it, the plaintiffs were not in default once |
| 02:11 | 23 | the bankruptcy plan was confirmed.  There is plenty of law |
| 02:11 | 24 | on that subject.  It's 11 U.S. Code Section 1327.  It's |
| 02:11 | 25 | cited all over the defendant's papers, in their Opposition |

02:11  1  to the Motion for Preliminary Injunction.  They reference

02:11  2  cases there at pages four through seven and eight of their

02:11  3  Opposition to the Motion for Preliminary Injunction citing

02:11  4  the Bullard case, the Trulis case, the Blendheim, the

02:11  5  Kelley, the Martin cases, and even Seven Collier On

02:11  6  Bankruptcy.

02:11  7          I want to read actually a part -- see, that comes

02:11  8  right directly from their opposition.  Here is what they

02:12  9  say.  They cite from Collier:  "In essence, a valid plan

02:12  10  substitutes in much the same way a common law novation would

02:12  11  the obligation as stated in the plan for all

02:12  12  pre-confirmation claims and interests."  And they emphasize

02:12  13  that part.

02:12  14          "As to agreed provisions, the Plan is a contract

02:12  15  between the proponent and those bound by it.  Should a

02:12  16  confirmed Plan later fail, creditors may sue only on the

02:12  17  obligations as stated in the Plan."  That's as cited by

02:12  18  them, Seven Collier On Bankruptcy, page 1129.01 (1), 15th

02:12  19  Edition Revised.

02:12  20          Okay, so what this means is that at the time a

02:12  21  plan is confirmed there is no default anymore, Your Honor.

02:12  22  The only thing there could be a default on is if they

02:12  23  default on the plan, and then somebody can sue again under

02:12  24  the plan.  So if there were a default earlier, even assuming

02:13  25  there were, at the time the plan was confirmed and as long

02:13   1   as that plan is going, there is no default.

02:13   2          So my clients are in a confirmed plan as the Court

02:13   3   is aware.  They've made payments for almost three years,

02:13   4   three years in May.  Under the confirmed plan, they are not

02:13   5   in default.  They can sue for breach of contract.  They can

02:13   6   sue for breach of the implied covenant of good faith and

02:13   7   fair dealing.  And those other arguments don't apply to

02:13   8   them.

02:13   9          Were it otherwise, it would be the situation that

02:13   10  there would be no such thing as adversary complaints in

02:13   11  bankruptcies because there would be no point in it.  There

02:13   12  would always be a finding that the debtors were in default

02:13   13  on a mortgage loan, so they are out of luck.  They can never

02:13   14  sue.  And I know the Court would never intend that result.

02:13   15         If for whatever reason the Court doesn't agree

02:13   16  with that rationale, then at the time that the plaintiffs

02:13   17  finish their plan payments in two years and all the

02:13   18  pre-petition, quote, "default" is cured, at that point they

02:13   19  definitely are not in default.

02:14   20         So here we get into some difficulties because the

02:14   21  tentative said the dismissal would be with prejudice.  Well,

02:14   22  then what happens?  Suppose my client -- suppose this case

02:14   23  is dismissed today and my client has finished their plan

02:14   24  payments.  Does that mean in two years they can never try to

02:14   25  recover the money?  I'm sure that's not what the Court

02:14    1    intended.  That doesn't make sense to me.

02:14    2           At the very least, I would say if there is a

02:14    3    dismissal it would need to be without prejudice.  Even if

02:14    4    there isn't an ability to amend, the dismissal should be

02:14    5    without prejudice.  And there should be some finding that

02:14    6    there is a tolling of the statute of limitations on these

02:14    7    claims because otherwise it's tantamount to my client having

02:14    8    a dismissal with prejudice because of the running of the

02:14    9    statute of limitations in the interim.

02:14   10           Moving on to the breach of implied covenant, it's

02:14   11    similar to the same analysis.  It's clear under California

02:14   12    law that implied in every contract entered into in this

02:15   13    state that the covenant of good faith and fair dealing

02:15   14    prohibits one party from gaining an advantage on the other

02:15   15    one, prohibits a party from taking away from the other one

02:15   16    the benefits of full performance of the contract.

02:15   17           In this case, the benefits of full performance are

02:15   18    things like getting the benefit of that 125 percent

02:15   19    limitation on the trustee, getting the benefit of whatever

02:15   20    the contracted for interest rate was.  In this case -- and I

02:15   21    don't think the Court had a chance to address it in the

02:15   22    tentative -- we have alleged very plausibly that the

02:15   23    contract interest rate is now fixed at 2.8 percent.

02:15   24           It's fixed because the contract -- the trustee was

02:15   25    at a 2.8 percent margin with an index that was set by the

02:15  1   internal GDW index of Golden West Bank Financial.  It said
02:15  2   our index rate that fluctuates is based on the interest rate
02:16  3   that Golden West only uses in making its loans to its other
02:16  4   subsidiaries, and it was never changed.  Wells Fargo Bank
02:16  5   never changed it.  Wachovia never changed it.  No one ever
02:16  6   changed it, and it went forward.

02:16  7         Golden West went out of business.  GDW index
02:16  8   disappeared, and the margin became the interest rate.  So
02:16  9   now we are claiming plausibly that there are lots of
02:16 10   overcharges.  We don't even really know that the plaintiffs
02:16 11   were in default, and we don't know for how long because we
02:16 12   don't know how far off the index calculations were on the
02:16 13   interest rates, which goes to why we do think we need an
02:16 14   accounting.

02:16 15         One quick aside that kind of involves banking
02:16 16   regulation law, the Court may not be aware but the mere fact
02:16 17   that there is a 125 percent limitation on the trust deed and
02:16 18   that the debt got to where it exceeded that doesn't mean
02:17 19   that the plaintiffs were in default because it was a
02:17 20   negative amortization loan and specifically allowed the
02:17 21   principal to increase.  It allowed it to increase without a
02:17 22   limit actually.  It just had a provision that said if it
02:17 23   gets over 125 percent then that excess has to be immediately
02:17 24   credited back.

02:17 25         Your Honor, I have been working very hard on

02:17   1   trying to determine exactly why that was in there, and I'm
02:17   2   still working on it.  I believe that there are some
02:17   3   securities regulation violations going on.  I think it was
02:17   4   an old provision under the FSLIC, Federal Savings and Loan
02:17   5   Insurance Corporation, which had an agreement with World
02:17   6   Saving that said, sure, we will insure your investments, but
02:17   7   you'd better make sure nothing ever exceeds 125 percent of
02:17   8   the principal.
02:17   9           So to do that, World Savings put in that
02:17  10   provision, and then when it exceeded it, it would rather
02:17  11   just give up any excess than have all its loans audited or
02:17  12   called or be in violation of federal securities regulations.
02:18  13           Anyway, moving on, the Court had said in the
02:18  14   tentative that the only way we can show performance is you
02:18  15   have to get to promissory estoppel or an excuse for
02:18  16   nonperformance.  First, I don't think that's right.  I think
02:18  17   Civil Code Section 1151 says it's an express excuse for
02:18  18   nonperformance if there is a statement from the obligee that
02:18  19   payments have to be made or to stop them from making the
02:18  20   payments.  And it doesn't matter if it's in writing, and it
02:18  21   doesn't matter if there is a stipulation otherwise.
02:18  22           So the argument that, well, we have a writing in
02:18  23   the trust deed and the promissory note that says that there
02:18  24   can be no modifications except if it's in writing and
02:18  25   statute fraud applies, that doesn't matter.  It also says

| | | |
|---|---|---|
| 02:18 | 1 | that Civil Code Section 1511 allows for where there is a |
| 02:18 | 2 | delay in performance because the obligee suggested the |
| 02:19 | 3 | delay.  So I think that gets us around that problem. |
| 02:19 | 4 | Again, you know, in this 12(b)(6) motion in our |
| 02:19 | 5 | first bite at the apple and our first appearance actually |
| 02:19 | 6 | here in this case, the Court, of course, needs to construe |
| 02:19 | 7 | the facts most favorably to my clients.  It feels that that |
| 02:19 | 8 | didn't really happen and, if anything, be given leave to |
| 02:19 | 9 | amend. |
| 02:19 | 10 | The other causes of action where the Court found |
| 02:19 | 11 | in the tentative that HOLA did not apply were the sixth and |
| 02:19 | 12 | seventh causes of action for negligent misrepresentation and |
| 02:19 | 13 | constructive fraud respectfully.  Obviously I disagree with |
| 02:19 | 14 | the Court's analysis here.  I think fraud does apply, |
| 02:19 | 15 | especially constructive fraud, because we have shown that -- |
| 02:19 | 16 | we don't really have to have reliance on that because it's |
| 02:19 | 17 | constructive fraud. |
| 02:19 | 18 | But even if we do, we have alleged it in the |
| 02:19 | 19 | Complaint.  We have alleged the damages and that the |
| 02:20 | 20 | plaintiffs relied on Wells Fargo's statement of what the |
| 02:20 | 21 | actual damages were in putting that amount into their |
| 02:20 | 22 | proposed plan. |
| 02:20 | 23 | Then on the other causes of action, the Court had |
| 02:20 | 24 | stated that they were barred by HOLA.  Okay, this was a case |
| 02:20 | 25 | that was filed in Superior Court in October of last year and |

| | | |
|---|---|---|
| 02:20 | 1 | removed.  So there are state claims in here because, of |
| 02:20 | 2 | course, it's the state action that was removed. |
| 02:20 | 3 | I'm concerned about a formulaic approach that |
| 02:20 | 4 | Wells Fargo seems to have.  You know, I have done a lot of |
| 02:20 | 5 | research on these cases, and it's always the same thing. |
| 02:20 | 6 | Somebody files the state court case.  It gets removed by |
| 02:20 | 7 | Wells Fargo Bank.  Then Wells Fargo immediately files its |
| 02:20 | 8 | 12(b)(6) motion as it has to, but it uses the same exhibits |
| 02:20 | 9 | and the same request for judicial notice. |
| 02:20 | 10 | Exhibit A is the trustee -- I mean, I have looked |
| 02:20 | 11 | at the Complaints.  I have looked at the court cases.  And |
| 02:20 | 12 | the court cases talk about, oh, we can accept judicial |
| 02:21 | 13 | notice of this, this, and this. |
| 02:21 | 14 | THE COURT:  What is wrong with all of that? |
| 02:21 | 15 | MS. CAZZELL:  What's wrong with all of that is |
| 02:21 | 16 | that it's not paying particular attention to the facts of |
| 02:21 | 17 | the case, the particular case, i.e., this case.  It |
| 02:21 | 18 | doesn't -- |
| 02:21 | 19 | THE COURT:  What's wrong with taking judicial |
| 02:21 | 20 | notice of the Deed of Trust? |
| 02:21 | 21 | MS. CAZZELL:  Oh, there is nothing wrong with |
| 02:21 | 22 | that.  That's fine.  But you have Exhibit A, the Deed of |
| 02:21 | 23 | Trust.  The promissory note is usually in there, not always. |
| 02:21 | 24 | Anyway, the Court has taken judicial notice of |
| 02:21 | 25 | that, which is great, and the promissory note.  But then |

02:21   1    Wells Fargo Bank puts in, okay, well, here's World Savings

02:21   2    going out of business and here is Wachovia, and here is

02:21   3    Wells Fargo Bank buying Wachovia.

02:21   4            What wasn't pinpointed here and what I have raised

02:21   5    and I haven't seen raised in the other cases was that

02:21   6    Wachovia converted to an N.A., a national association.  The

02:21   7    cases that are cited say that for diversity purposes and

02:22   8    FSB, a Federal Savings Bank -- if it's taken over by an

02:22   9    N.A., then the N.A. -- here Wells Fargo -- can claim FSB

02:22   10   status for the purpose of doing a HOLA preemption.  But none

02:22   11   of these cases address the situation where the bank,

02:22   12   Wachovia, converted expressly to an N.A., and then Wells

02:22   13   Fargo took it over.

02:22   14           So that's what I am a little concerned about, that

02:22   15   maybe some of these little nuances are missed.  As the Court

02:22   16   is aware, we argued that Wells Fargo --

02:22   17           THE COURT:  Well, the HOLA preemption applied at

02:22   18   the time the loan was initiated, correct?

02:22   19           MS. CAZZELL:  I think it may have.

02:22   20           THE COURT:  The answer is clearly yes.

02:22   21           MS. CAZZELL:  So then why --

02:22   22           THE COURT:  Put aside the scope of the preemption.

02:22   23   A HOLA preemption would apply to the issuing entity given

02:22   24   its status at the time of the issuance of the loan, true?

02:22   25           MS. CAZZELL:  I don't know.  I will concede -- I

| | | |
|---|---|---|
| 02:23 | 1 | mean, what I have a difficulty with is that Wells Fargo is |
| 02:23 | 2 | saying we are a national association, so we can remove you |
| 02:23 | 3 | on diversity grounds and saying we are an FSB in this |
| 02:23 | 4 | purpose. |
| 02:23 | 5 | Okay, so assuming that the Court is -- that that's |
| 02:23 | 6 | correct -- let's say that is correct.  But then it was -- |
| 02:23 | 7 | the HOLA preemption went away at the time Wachovia, who had |
| 02:23 | 8 | the loan -- |
| 02:23 | 9 | THE COURT:  You see, that's what I disagree with. |
| 02:23 | 10 | MS. CAZZELL:  You disagree with that? |
| 02:23 | 11 | THE COURT:  There are two lines of cases.  If the |
| 02:23 | 12 | entity issuing the loan was subject to a HOLA preemption, |
| 02:23 | 13 | that lasts the life of the loan regardless of whether the |
| 02:23 | 14 | HOLA preemption was asserted by the holder of the loan at |
| 02:23 | 15 | the time of the litigation. |
| 02:23 | 16 | There are two lines of cases.  I just think it |
| 02:23 | 17 | makes more sense to honor the initial status.  It's a red |
| 02:23 | 18 | line rule.  Everybody knows where they are. |
| 02:24 | 19 | MS. CAZZELL:  Well, there is an advantage to red |
| 02:24 | 20 | line rules, but I don't think -- I didn't see any cases |
| 02:24 | 21 | where Wells Fargo or what is now an N.A. had taken over a |
| 02:24 | 22 | loan from another N.A., which was Wachovia. |
| 02:24 | 23 | THE COURT:  Are there any other points you want to |
| 02:24 | 24 | address? |
| 02:24 | 25 | MS. CAZZELL:  Yes. |

| | | |
|---|---|---|
| 02:24 | 1 | THE COURT:  You have got about five minutes. |
| 02:24 | 2 | MS. CAZZELL:  All right.  Anyway, the Court in |
| 02:24 | 3 | Footnote 3 addressed our motion or request to remand.  I |
| 02:24 | 4 | believe it should be remanded because I don't think the bank |
| 02:24 | 5 | can hold both positions at once, an N.A. and an FSB on the |
| 02:24 | 6 | other side. |
| 02:24 | 7 | The 125 percent excess limitation was not |
| 02:24 | 8 | addressed at all in any of the contract kind of claims and |
| 02:24 | 9 | only obliquely in the fraud claims, and I think that should |
| 02:24 | 10 | be addressed. |
| 02:24 | 11 | The plaintiffs are willing -- if the Court is |
| 02:24 | 12 | going to stand on its tentative, the plaintiffs would rather |
| 02:25 | 13 | dismiss without prejudice the eighth cause of action, which |
| 02:25 | 14 | is where the Court had said, well, you can have leave to |
| 02:25 | 15 | amend because we think that that's the tail wagging the dog, |
| 02:25 | 16 | and we would rather have a clearer record. |
| 02:25 | 17 | THE COURT:  You just want to dismiss and go up? |
| 02:25 | 18 | Is that what you are saying? |
| 02:25 | 19 | MS. CAZZELL:  Dismissing the eighth cause of |
| 02:25 | 20 | action, which was the one where the Court said -- and |
| 02:25 | 21 | rightly so -- that there were some federal claims in |
| 02:25 | 22 | there -- |
| 02:25 | 23 | THE COURT:  Right. |
| 02:25 | 24 | MS. CAZZELL:  Or at least if the Court sticks with |
| 02:25 | 25 | its tentative certify it as appealable under FRCP 54(b). |

02:25   1          I wanted to address quickly another case that came

02:25   2   up.  It's Jones versus Wells Fargo Bank.  This was a

02:25   3   Louisiana case from 2012, 2013, affirmed going back and

02:25   4   forth to the Bankruptcy Court.  Michael Jones, Civil Action

02:25   5   No. 12-1362, in the Eastern District of Louisiana where

02:25   6   Wells Fargo Bank was --

02:25   7          THE COURT:  I'm looking at your memorandum.  That

02:26   8   doesn't seem to be discussed in your memorandum.  It's

02:26   9   certainly not in your list of authorities.

02:26   10          MS. CAZZELL:  No, it wasn't addressed.  Of course

02:26   11   I'm now --

02:26   12          THE COURT:  Or in your memorandum in opposition.

02:26   13          MS. CAZZELL:  Right.  This is addressed in

02:26   14   response to the tentative ruling, Your Honor.

02:26   15          Wells Fargo Bank apparently does this regularly,

02:26   16   and the Court -- this particular judge found that Wells

02:26   17   Fargo's litigation tactics were particularly vexing because

02:26   18   only through lots of discovery was Wells Fargo's litigation

02:26   19   standards found and that Wells Fargo never actually went and

02:26   20   changed things.

02:26   21          For example, in this case, Wells Fargo is now well

02:26   22   aware that it has filed a Proof of Claim in excess of the

02:26   23   amount of money, and it hasn't done anything to change it

02:26   24   yet.  That's actually a violation of the stay, the automatic

02:26   25   stay.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 02:26 | 1 | In this quote from this case, it says:  "Wells |
| 02:26 | 2 | Fargo has taken advantage of borrowers who rely on it to |
| 02:27 | 3 | accurately apply payments and calculate the amounts owed. |
| 02:27 | 4 | Perhaps more disturbing is Wells Fargo's refusal to |
| 02:27 | 5 | voluntarily correct its errors." |
| 02:27 | 6 | At the least, Your Honor, in our accounting cause |
| 02:27 | 7 | of action, the Court –– |
| 02:27 | 8 | THE COURT:  But the tentative correctly notes that |
| 02:27 | 9 | accounting is not a cause of action.  It's a remedy. |
| 02:27 | 10 | MS. CAZZELL:  Okay.  In the argument that pertains |
| 02:27 | 11 | to it, the Court said on page 15, citing to its own case, |
| 02:27 | 12 | Williams versus Wells Fargo Bank, that an accounting was not |
| 02:27 | 13 | available where there was no money owed. |
| 02:27 | 14 | THE COURT:  Right. |
| 02:27 | 15 | MS. CAZZELL:  I have a difficult time with that, |
| 02:27 | 16 | Your Honor, because it sounds like a summary judgment kind |
| 02:27 | 17 | of finding.  We –– you know, this is our first appearance. |
| 02:27 | 18 | How could it already have been determined that there is no |
| 02:27 | 19 | money owed?  We already know there's an excess amount of |
| 02:27 | 20 | interest charged. |
| 02:27 | 21 | At least if we plausibly accepted the plaintiffs' |
| 02:27 | 22 | allegations as true, which we should on a Motion to Dismiss, |
| 02:28 | 23 | we already know that they tried to foreclose on an amount in |
| 02:28 | 24 | excess of what was allowed under the trust deed, and that |
| 02:28 | 25 | excess had to under the terms of the promissory note be |

| | | |
|---|---|---|
| 02:28 | 1 | refunded back.  And that was almost $100,000.  So how can we |
| 02:28 | 2 | say -- how can we know as a matter of law that there would |
| 02:28 | 3 | be no money owed? |
| 02:28 | 4 | I think at the very least we should have leave to |
| 02:28 | 5 | amend.  We want to allege some SEC violations, some unfair |
| 02:28 | 6 | competition law things per the recent case that came down |
| 02:28 | 7 | that was cited.  I think there is even some RICO problems |
| 02:28 | 8 | here.  But, again, obviously the Court is going to do what |
| 02:28 | 9 | it's going to do, and if need be, we will dismiss the eighth |
| 02:28 | 10 | cause of action without prejudice.  We think if there is a |
| 02:28 | 11 | dismissal it should all be without prejudice because there |
| 02:28 | 12 | is just no reason for it to be with prejudice at this point |
| 02:28 | 13 | and just deprive the plaintiffs of -- I mean, they think |
| 02:28 | 14 | they have damages of close to a million dollars.  That's |
| 02:28 | 15 | general damages. |
| 02:28 | 16 | Thank you, Your Honor.  Thank you for allowing me |
| 02:28 | 17 | to be heard. |
| 02:29 | 18 | THE COURT:  Thank you. |
| 02:29 | 19 | Mr. La. |
| 02:29 | 20 | MR. LA:  Thank you, Your Honor. |
| 02:29 | 21 | Counsel has mentioned the phrase "tail wagging the |
| 02:29 | 22 | dog."  I think that that phrase and that saying is very |
| 02:29 | 23 | applicable here because that addresses the whole bankruptcy |
| 02:29 | 24 | issue that's in place in this case. |
| 02:29 | 25 | Plaintiffs raise this idea of novation saying |

| | | |
|---|---|---|
| 02:29 | 1 | that, all right, because now the Bankruptcy Court has come |
| 02:29 | 2 | back and confirmed the Chapter 13 plan that that somehow |
| 02:29 | 3 | absolves plaintiffs of their default, their prior default, |
| 02:29 | 4 | the default that was in place which caused their filing BK |
| 02:29 | 5 | twice, not once but twice.  Their allegations made clear |
| 02:29 | 6 | that they felt like they had no other choice in order to |
| 02:29 | 7 | stop the nonjudicial foreclosure but to file these two BK |
| 02:30 | 8 | applications. |
| 02:30 | 9 | The Bankruptcy Court's confirmation of their |
| 02:30 | 10 | Chapter 13 plan does not -- it doesn't erase any sort of |
| 02:30 | 11 | past default.  What it does is it takes plaintiffs' |
| 02:30 | 12 | request -- they're asking the Bankruptcy Court to say, hey, |
| 02:30 | 13 | instead of these payments -- I know this much is owed, which |
| 02:30 | 14 | they set forth clearly in their bankruptcy application. |
| 02:30 | 15 | They are saying please confirm my plan.  What I will do is I |
| 02:30 | 16 | will pay what is owed, and I will continue to make payments |
| 02:30 | 17 | because the party's loan agreement requires it.  That the |
| 02:30 | 18 | Bankruptcy Chapter 13 Plan has been confirmed does nothing |
| 02:30 | 19 | to cure the past default. |
| 02:30 | 20 | Plaintiffs also raise this idea of voidness and |
| 02:30 | 21 | all these other allegations that, you know, makes -- that |
| 02:30 | 22 | the voidness doctrine somehow makes the breach of contract |
| 02:30 | 23 | claim and the elements that support the breach of contract |
| 02:30 | 24 | claim irrelevant, and it does not. |
| 02:30 | 25 | THE COURT:  I didn't see the voidness argument in |

| | | |
|---|---|---|
| 02:30 | 1 | their opposition.  Did I miss something? |
| 02:31 | 2 | MR. LA:  No.  I was going to say that as well. |
| 02:31 | 3 | But in addition to that, counsel is just talking about a |
| 02:31 | 4 | breach of contract.  If there was this extra interest that |
| 02:31 | 5 | was charged, if there was these extra principal payments |
| 02:31 | 6 | that were charged, then that's just a breach of contract, |
| 02:31 | 7 | Your Honor.  That is something that plaintiffs were well |
| 02:31 | 8 | aware of before the bankruptcy was filed going all the way |
| 02:31 | 9 | back to 2008 or so. |
| 02:31 | 10 | In addition to not explaining how their inability |
| 02:31 | 11 | to pay the mortgage obligations were justified -- I mean, |
| 02:31 | 12 | all of these claims are really time barred, Your Honor.  I |
| 02:31 | 13 | mean, we are talking about from 2007 to 2009 when some of |
| 02:31 | 14 | these events happened. |
| 02:31 | 15 | The Notice of Default was recorded in April 2010. |
| 02:31 | 16 | Plaintiffs' Complaint says incorrectly that the foreclosure |
| 02:31 | 17 | proceeding started in July 2010.  Well, if that's the case, |
| 02:31 | 18 | they knew of their harm at that time.  If that's the case, |
| 02:31 | 19 | giving them the benefit of the four-year statute of |
| 02:31 | 20 | limitations, then any breach of contract, any breach of the |
| 02:31 | 21 | implied covenant theory has been time barred. |
| 02:32 | 22 | There is also no justification that has been set |
| 02:32 | 23 | forth by counsel here.  It seems that plaintiffs' inability |
| 02:32 | 24 | to make their mortgage payments really came from outside |
| 02:32 | 25 | circumstances, that they had agreed to do all this |

02:32   1   landscaping in the community that they lived in.  That has

02:32   2   nothing to do with the bank, Your Honor.  And the Notice of

02:32   3   Default that has been judicially noticed by the Court

02:32   4   clearly sets forth that any default came in September of

02:32   5   2008.

02:32   6          So by plaintiffs asserting that the bankruptcy

02:32   7   somehow like erases all those acts is not correct, and it

02:32   8   really goes against any tenet of what a California breach of

02:32   9   contract claim can support.

02:32   10          The promissory estoppel claim, I mean, again,

02:32   11   counsel raises a lot of different allegations.  Now she is

02:32   12   talking about the SEC and some RICO violations.  It doesn't

02:32   13   get to the fundamental elements that are necessary to

02:33   14   articulate a promissory estoppel claim, which is an

02:33   15   unambiguous promise.  That is the first element.  There is

02:33   16   no unambiguous promise set forth in the pleadings.

02:33   17          Maybe to the best is that the bank promised to

02:33   18   consider plaintiffs for a loan mod review.  But the

02:33   19   pleadings are clear -- and these are judicial admissions

02:33   20   made by the plaintiffs -- that that review did happen, and

02:33   21   they were denied.  So there cannot be any promissory

02:33   22   estoppel claim based just on the fundamental elements that

02:33   23   are necessary in order to just articulate such a claim.

02:33   24          Accounting, I mean, plaintiffs' counsel raises a

02:33   25   lot of points here.  Accounting, I mean, there is no money

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

02:33  1    that is owed from Wells Fargo.  The payments that -- she is
02:33  2    saying that they made these extra payments.  These extra
02:33  3    payments were ordered by the Bankruptcy Court that they
02:33  4    promised to give through their bankruptcy to get the
02:33  5    protection of their BK plan to stop the forfeiture in order
02:33  6    for them to like get back on the payment plan so they can
02:33  7    fulfill their mortgage obligations.
02:34  8            So any claim that there is any amount owing from
02:34  9    the bank to plaintiffs is inaccurate, and there is no
02:34 10    special relationship that would give rise to an accounting
02:34 11    claim anywhere.
02:34 12            Real briefly, constructive fraud and negligent
02:34 13    misrepresentation, I mean there is no duty.  There is no
02:34 14    fiduciary duty.  There is no legal duty of care that can
02:34 15    support any claim based on a claim where a legal duty is the
02:34 16    prerequisite.  It's the predicate to get past -- in order to
02:34 17    go forward with the other elements.
02:34 18            We have talked about HOLA here a lot.  I think
02:34 19    Your Honor correctly points out that based on successor and
02:34 20    merger principles and based on contract principles any sort
02:34 21    of federal preemption follows with the loan through
02:35 22    perpetuity.
02:35 23            That's is something that's confirmed by the OTS
02:35 24    itself.  They have weighed in on this issue, and they have
02:35 25    said, hey, yes, these loans are supposed to be able to be

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

02:35   1    purchased by another entity that is not an FSB, and the

02:35   2    federal preemption under HOLA will apply.

02:35   3                Is there any other specific points that I may

02:35   4    address, Your Honor?

02:35   5                THE COURT:  No.  Thank you.

02:35   6                Briefly, Ms. Cazzell.

02:35   7                MS. CAZZELL:  Thank you, Your Honor.

02:35   8                It's alleged in the Complaint -- I'm trying to

02:35   9    locate the exact paragraph now -- but also in the

02:35   10   declaration that Gholam Rastegar submitted in support of the

02:35   11   Motion for Preliminary Injunction -- and the Court

02:35   12   considered them together.  Clearly, at paragraph four of his

02:35   13   declaration:  "As noted in the Complaint, while we did not

02:35   14   realize it until later in the year 2015, after we were able

02:35   15   to locate our present attorney and she had the opportunity

02:35   16   to review the loan paperwork, the amount of money Wells

02:35   17   Fargo claimed was due was incorrect based on excessive

02:36   18   claims of principal and interest."

02:36   19               Come on, Your Honor, the Court, attorneys, and

02:36   20   apparently a lot of other attorneys couldn't catch these

02:36   21   little nuances.  How could lay people possibly know about,

02:36   22   you know, the excess, what's in the trust deed, what's

02:36   23   buried in the promissory note a few pages in in regular

02:36   24   small print that says if there is an excess of 125 percent

02:36   25   it has to be sent back?  I mean, if anything, I feel that

02:36  1    counsel's arguments -- you know, hey, well, too bad.  They

02:36  2    were in default at one point, so they lose hands down on

02:36  3    everything.  That's not right.

02:36  4              We are here and I'm addressing the particular

02:36  5    issue of whether or not my clients had a right because they

02:36  6    were or were not in default on the loan to even bring these

02:36  7    claims.  They are saying, well, no, you were in default on

02:36  8    the loan once, so too bad.  That's not right.  That's not

02:37  9    the law.  That doesn't make any sense.  It's certainly not

02:37  10   equitable.  It throws out the whole purpose of bankruptcies

02:37  11   and plans.  It doesn't seem like a logical conclusion, and I

02:37  12   suggest it's not the right one, Your Honor.

02:37  13             THE COURT:  Thank you very much.  The matter will

02:37  14   stand submitted.

02:37  15             (Whereupon, the proceedings were concluded.)

02:37  16                         *     *     *

02:37  17

02:37  18

02:37  19

02:37  20

02:37  21

02:37  22

02:37  23

02:37  24

02:37  25

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
02:37    1
02:37    2
02:37    3
02:37    4                        CERTIFICATE
02:37    5
02:37    6          I hereby certify that pursuant to Section 753,
02:37    7   Title 28, United States Code, the foregoing is a true and
02:37    8   correct transcript of the stenographically reported
02:37    9   proceedings held in the above-entitled matter and that the
02:37   10   transcript page format is in conformance with the
02:37   11   regulations of the Judicial Conference of the United States.
02:37   12
02:37   13   Date:  July 17, 2016
02:37   14
02:37   15
02:37                              /s/   Sharon A. Seffens  7/17/16
02:37   16                         _____
02:37                              SHARON A. SEFFENS, U.S. COURT REPORTER
02:37   17
02:36   18
        19
        20
        21
        22
        23
        24
        25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER